UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA G. ANDERSON,

       Plaintiff,

v.

FIRST FRANKLIN, a Division of National City
Bank of Indiana, FIRST FRANKLIN FINANCIAL
CORPORATION; DEUTSCHE BANK NATIONAL
TRUST COMPANY, as Trustee for First Franklin
Mortgage Loan Trust 2006-FF3, Mortgage Pass-
Through Certificates, Series 2006-FF3; and HOME
LOAN SERVICES, INC., Jointly and Severally,

       Defendants.

CASE NO. 2:09-CV-11096
JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE PAUL KOMIVES

_____/

### REPORT AND RECOMMENDATION

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Choice of Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.    *Constructive Fraud* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2.    *Breach of Fiduciary Duty* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        3.    *Equity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    E.    *Amendment of the Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

\*      \*      \*      \*      \*

I.     <u>RECOMMENDATION</u>: The Court should grant defendants' motion to dismiss (docket #14).

II.    <u>REPORT</u>:

A.    *Background*

      Plaintiff Linda G. Anderson commenced this action on March 9, 2009, by filing a complaint

in the Wayne County Circuit Court.  The defendants are First Franklin, First Franklin Financial Corporation, Deutsche Bank National Trust Company, and Home Loans Services, Inc.  On March 24, 2009, defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, based on the diverse citizenship of the parties.  The basis facts are not in dispute.  On November 9, 2005, plaintiff as borrower and defendant First Franklin as lender executed a mortgage in the amount of $215,800.00, covering plaintiff's home.  The mortgage included an adjustable rate rider providing an initial interest rate of 7.625% and a semi-annual adjustment calculated by adding 5.25% to the London Interbank Offered Rates (LIBOR).  The rider also provides a cap of 10.625% on the rate after the first change date, and a cap of 13.625% over the life of the mortgage.  *See* Def.'s Br. in Supp. of Mot. for Summ. J./Dismissal [hereinafter "Def.'s Br."], Ex. B.  This loan refinanced an existing $61,906.58 mortgage on the property, netting approximately $150,000.00 paid in cash to plaintiff at the closing.  *See id.*, Exs. E & F.  The mortgage was subsequently assigned to defendant First Franklin Financial, and then to defendant Deutsche Bank.  *See id.*, Ex. C.  Deutsche Bank initiated foreclosure proceedings following plaintiff's default in failing to make regular payments, and a Sheriff's sale was held on September 10, 2008.  *See id*, Ex. D.

In her complaint, plaintiff alleges that defendants engaged in constructive fraud.  She does not contend that there was any fraud in the execution or foreclosure of the mortgage, nor does she contend that the mortgage or foreclosure were otherwise invalid.  Rather, she contends that defendants committed constructive fraud, with other players in the banking and housing industries, by loosening lending standards and pumping up the housing bubble which ultimately popped in 2007, causing a depression in home prices and leading to a cascade of mortgage defaults and bank failures.  Relevant to her fraud allegations, plaintiff alleges:

8.      Your Defendant(s), acting in concert with other members of the "Mortgage Industry" during the period commencing from the mid 1990's and continuing through 2008, and mindful of the evolution of the Wall Street based mindset, made a conscious and deliberate choice to nearly totally abandon "borrower based ability to repay" guidelines to increase their loan volume.   The industry's switch to product lines such as 80/20 loans (eliminating the requirement for either a down payment or mortgage insurance) "No Doc" and "Low Doc" loans, whereby the typical borrower merely had to "state" his/her earnings and said bare unsupported statements were accepted with no verification, etc., are apt documentation of the truth of this allegation.   To complete the "abandonment of judgment" process, "interest only" and, even "negative amortization" mortgage product selections were added to the industry's product line mix.

9.      That by affirmatively determining to abandon its former stringent borrower credit worth guidelines for the sole purpose of "churning" more mortgages to increase profits in the short term, the "mortgage industry," as embodied by these Defendant(s), embarked on a course of conduct that they knew, or alternatively, should have known based on the reckless nature thereof, quite literally is solely responsible for the chain of events that followed, to wit:

a.      With minimal credit guidelines in place, speculators having no intention of residing in said homes, began to purchase single family residences in hopes of "flipping" them for short term profits by reselling same to "homesteaders" (hereinafter defined as persons requiring a home to reside in.)

b.      Said speculators began competing with "homesteaders" in the same housing markets, thus "artificially" restricting the supply of available homes available to "homesteaders."   As "speculators" became successful, more investors began competing for the same home supply thusly increasing the demand.   Basic economic theory advises that when supply diminishes and demand increases, prices must rise.

c.      The "Mortgage Industry" as embodied by this [sic] Defendant(s), embraced the rising home prices and began to base its appraisals of the "value" of the home on the rising market values alone, disregarding the two other standards used by the Appraisal industry, to wit: the "income" approach and the "cost less depreciation" approach.   The abandonment of these sound appraisal principles in favor of inflating already overheated housing prices, had one principal motive; increased home "values" translated into increased loan amounts, and, of course, greater profits.

10.     That the "Mortgage Industry" as embodied by these Defendant(s),

3

knowingly, intentionally and deliberately (or, alternatively, acted with such reckless disregard for the wellbeing of its customers) as hereinabove stated, nearly singly handedly created the artificial "housing bubble" which has now burst, leaving its customers holding loans well in excess of their home values and quite literally, entrapping their customers, including your Plaintiff in homes so overburdened with debt and overblown "artificially overstated" valuation, rendering same thereby un-sellable and unaffordable.

11.     The facts, as herein above stated, when viewed as a whole, undertaken by the very financial community who's stated goals are to provide the general population with enforced financial responsibility guidelines, and who possess the financial knowledge and resources to accomplish their quasi fiduciary responsibilities to their borrowers, have, by their knowing and/or reckless conduct, created the most unstable housing and economic market in recent history, all in the name of higher profits.  Their knowing and/or reckless conduct constitutes 'constructive fraud' on their customers as embodies by this Plaintiff.

12.     Your Plaintiff hereby alleges that Defendant(s) owed certain duties to your Plaintiff, including, but not necessarily limited to; insuring that their actions did not cause an artificial and/or "false" impact on the residential marketplace which ultimately devaluated and/or alternatively, initially overvalued the worth of her security, i.e. Plaintiff's residence.  Defedant(s) had a further duty to Plaintiff to evaluate Plaintiff's financial condition and base their loan decision on Plaintiff's present and projected future ability to repay the loan.

13.     Defendant(s) breached their duties in the manner hereinabove described in these common allegations, as above stated.  Defendant(s) relationship with Plaintiff is, at minimum, quasi-fiduciary in that Defendant(s), members of a highly regulated financial institution/community, provided products, advice, guidelines and other forms of expertise, entitling Plaintiff to rely on Defendant(s) judgment, business, and credit practices as Defendant(s) had superior knowledge, a history of conservative lending practices, and establishes safeguards in place, that Plaintiff(s) should have been able to (and did, in actuality) rely upon.  Plaintiff's justifiable reliance resulted in immediate and bloated profits for Defendant(s), and a "bursting bubble" to your Plaintiff who faces eviction, loss of her main financial asset, loss of her good credit standing, and nearly total financial disaster.

14.     That the facts as hereinabove stated, when taken as an entire plan and scheme, constitutes "constructive fraud" by these Defendant(s) and the mortgage industry generally, against this Plaintiff and others similarly situated.  Succinctly stated, Plaintiff was "cajoled" into an artificially and

4

> unfairly over competitive and overheated housing market in order to shelter her and her family, and further were deceived by the Defendant(s) and/or Defendant(s) assignor(s) into believing that the artificially over-inflated sales or market value ascribed to her residence was, in fact, the fair market value her home.  Based upon these false pretenses as misrepresented by the Defendant(s), Plaintiff borrowed excess money she could not afford to repay for an overpriced home that she could not afford to live in and maintain, nor can she resell.

Compl., ¶¶ 8-14.  Plaintiff asks the Court to use its equitable powers to reconvey title to plaintiff and reform the mortgage debt to an amount reflecting the actual fair market value of the home at the inception of the mortgage.  *See id*., ¶ 16.

On May 8, 2009, defendants filed a motion to dismiss or for summary judgment.  Defendants argue that plaintiff has failed to plead her fraud claim with particularity as required by FED. R. CIV. P. 9(b), and that her claims should therefore be dismissed for failure to state a claim upon which relief may be granted.  They also argue that they are entitled to dismissal with respect to any allegation based on a breach of fiduciary duty, because there was no fiduciary relationship between plaintiff and defendants.  Finally, defendants argue that plaintiff is not entitled to any equitable relief because she comes to the Court with unclean hands.  Plaintiff filed a response on May 28, 2009. Plaintiff argues that her fraud claims are pleaded with sufficient particularity and that they establish a claim for relief.  She also argues that the defendants' superior knowledge created a quasi-fiduciary relationship between her and the defendants.  Alternatively, plaintiff asks that she be allowed to amend her complaint to further plead her claims if the Court finds her allegations insufficient, and to this end she attaches a proposed amended complaint.  The proposed amended complaint also asserts a claim under the Michigan Consumer Protection Act.  Defendants filed a reply on June 23, 2009.

B.      *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6).  In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim.  *Id*. at 47.  Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47.  However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual

allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).[1]

Because plaintiff alleges that defendants committed fraud, an analysis of the sufficiency of plaintiff's complaint also requires the Court to consider Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  To satisfy Rule 9(b), a complaint must "(1) specify the statements

---

[1]A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  Although the parties have attached some matters outside the pleadings, these matters do not relate to plaintiff's legal claims or to the arguments raised by defendants. In the body of their brief, defendants argue only that plaintiff's complaint fails to state a claim upon which relief may be granted.  The documents attached to the motion are by way of background only, and do not relate to defendants' legal arguments for dismissal.  Thus, in the analysis which follows I consider only the allegations of the complaint under the Rule 12(b)(6) standard, and do not consider the documents submitted by the parties.  Accordingly, the Court need not consider defendants' motion as one for summary judgment under Rule 56.  *See Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) ("Where . . . the court simply refers to supplementary material [in its recitation of the factual background of the case], but does not rely on them or use them as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary judgment."); *cf. Little Gem Life Servs., LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 916 (8th Cir. 2008).

that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation omitted).

C.    *Choice of Law*

As another preliminary matter, the Court must decide what law governs plaintiff's state law claims. Both parties proceed on the assumption that Michigan law applies. This assumption is correct, for three reasons.

First, in resolving the parties' state law claims, the Court must apply the substantive law of the state. 28 U.S.C. § 1652 ("The laws of the several states . . . shall be regarded as rules of decisions in civil actions in the courts of the United States, in cases where they apply."); *see also, Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In determining the appropriate source of law, the Court applies the choice of law rules of Michigan, the state in which this Court sits. *See Klaxon v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."); *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state."); *Security Ins. Co. v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) (same).

Under Michigan choice of law rules, a court "will apply Michigan law unless a 'rational reason' to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must

then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997). No other state has an interest with respect to plaintiff's claims. The fraud alleged in the complaint relates to a mortgage securing real property in Michigan and which was executed in Michigan.

Second, the mortgage agreement itself provides that the mortgage is "governed by federal law and the law of the jurisdiction in which the Property is located." Def.'s Br., Ex. B, ¶ 16. In *Chrysler Corp. v. Skyline Indus. Servs.*, 448 Mich. 113, 528 N.W.2d 698 (1995), the Michigan Supreme Court explicitly adopted the approach of the *Restatement (Second) of Conflicts of Laws*. The *Restatement* approach notes that the "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." RESTATMENT (SECOND) OF CONFLICTS OF LAWS § 187 cmt. e (Supp. 1988) [hereinafter "RESTATEMENT"]. Thus, as a general matter, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied[.]" *Id*. § 187(1); *see Chrysler Corp.*, 448 Mich. at 125, 528 N.W.2d at 703.

Third, both parties proceed on the assumption that Michigan law applies. Choice of law issues do not involve a court's subject matter jurisdiction, and may be stipulated to by parties as a matter of contract. For these reasons, there is substantial authority for the proposition that parties may stipulate during litigation the source of law governing their dispute. *See Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 687 (7th Cir. 1985); *Doe v. Nevada Crossing, Inc.*, 920 F. Supp. 164, 167 (D. Utah 1996); *Van Deurzen v. Yamaha Motor Corp. USA*, 688 N.W.2d 777, 781-82 (Wis.

Ct. App. 2004).[2]  By arguing solely in terms of Michigan, the parties have implicitly stipulated that Michigan law is controlling.  *See In re Apex Automotive Warehouse, L.P.*, No. 96 B 04594, 1999 WL 132849, at *3 (Bankr. N.D. Ill. Mar. 9, 1999); *cf. Golumbia v. Prudential Ins. Co.*, No. 96-1521, 1997 WL 345728, at *2 (6th Cir. June 20, 1997) (party waived right to challenge applicability of Michigan law, notwithstanding contractual choice-of-law provision selecting New York law, where party argued merits in district court under Michigan law and failed to raise the contractual choice-of-law provision).  *See generally*, *Cates*, 780 F.2d at 687 ("[T]he parties to a lawsuit can, within broad limits, stipulate to the law governing their dispute; and an implied stipulation is good enough.").  Stated another way, "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law."  *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995); *see also*, *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003); *Carbonic Prods. Co. v. Welding & Cutting Supply Co.*, No. 86-1730, 1987 WL 38061, at *1 (6th Cir. July 17, 1987) (per curiam); *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001).  Accordingly, the Court should conclude that Michigan law governs plaintiff's claims.

D.    *Analysis*

   1.    *Constructive Fraud*

Plaintiff contends that defendants' alleged role in inflating the housing bubble constituted

---

[2]A number of cases also note that the parties stipulated to the governing law and assume that the stipulation is controlling, without discussing the matter in detail.  *See, e.g.*, *National Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528-29 (10th Cir. 1993); *Wagenheim v. Natural Science Indus., Ltd.*, No. 1:04CV0239, 2006 WL 2794790, at *3 (N.D. Ohio Sept. 27, 2006); *Ethicon, Inc. v. Aetna Cas. & Surety Co.*, 805 F. Supp. 203, 204 n.1 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1532 (2d Cir. 1993); *Mariculture Prods. Ltd. v. Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91*, 854 A.2d 1100, 1103 n.2 (Conn. Ct. App. 2004)

constructive fraud.  The term "constructive fraud" is used by courts to describe different types of conduct which do not constitute actual fraud, but which nevertheless give rise to similar liability. Many jurisdictions define a constructive fraud as a breach of duty arising out of a fiduciary or confidential relationship which induces detrimental reliance.  *See, e.g.*, *In re Estate of Hedke*, 775 N.W.2d 13, 36 (Neb. 2009); *Jean v. Tyson-Jean*, 118 S.W.3d 1, 9 (Tex. Ct. App. 2003).  Other jurisdictions treat constructive fraud as the equivalent of fraudulent concealment, that is, the failure to disclose a material fact when there is a duty to do so.  *See, e.g.*, *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1180 (10th Cir. 2008) (applying Oklahoma law).  A third approach defines constructive fraud as an action containing all the elements of actual fraud except for an intent to defraud on the part of the defendant.  *See, e.g.*, *Richland County v. Carolina Chloride, Inc.*, 677 S.E.2d 892, 898 (S.C. Ct. App. 2009).  Michigan follows this later approach.

Under Michigan law, the elements of actionable fraud are: "(1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury." *Novi v. Robert Adell Children's Funded Trust*, 473 Mich. 242, 253 n.8, 701 N.W.2d 144, 152 n.8 (2005). Constructive fraud is an actual fraud without the element of intent. *See General Elec. Credit Corp. v. Wolverine Ins. Co.*, 420 Mich. 176, 188-90, 362 N.W.2d 595, 601 (1984).  In other words, "the distinction between actual fraud and constructive fraud is that actual fraud is an intentional misrepresentation that a party makes to induce detrimental reliance, while constructive fraud is a misrepresentation that causes the same effect, but without a purposeful design to defraud."

*Feldkamp v. Farm Bureau Ins. Co.*, No. 272855, 2009 WL 103223, at *5 (Mich. Ct. App. Jan. 15, 2009) (discussing *General Elec. Credit*).

Here, plaintiff's complaint is devoid of any allegations of fraudulent statements sufficient to satisfy Rule 9(b).[3]  Plaintiff alleges that the defendants, along with other mortgage companies, "abandon[ed] 'borrower based ability to repay' guidelines,'" and generally engaged in unsound lending practices, *see* Compl., ¶ 8, but regardless of whether this constituted bad business judgment she does not assert that these decisions were fraudulent, that is, that they amounted to material misrepresentations of fact.  Although there is no Michigan case law on point, the courts have uniformly held that, absent some statutorily imposed obligation, lenders have "no duty to refrain from making a loan if the lender knows or should have known that the borrower cannot repay the loan." *Northern Trust Co. v. VIII South Michigan Assocs.*, 657 N.E.2d 1095, 1102 (Ill. Ct. App. 1995); *see also*, *NyMark v. Heart Fed. Savings & Loan Ass'n*, 283 Cal. Rptr. 53, 57 (1991); *Production Credit Ass'n of Lancaster v. Croft*, 423 N.W.2d 544, 548 (Wis. Ct. App. 1988); *cf. United Jersey Bank v. Kensey*, 704 A.2d 38, 46-47 (N.J. Super. Ct. App. Div. 1997) ("courts have

---

[3]Plaintiff suggests that, because she is alleging constructive fraud, she need not satisfy Rule 9(b). *See* Pl.'s Br., at 9 ("As Plaintiff's claim is based on 'constructive fraud,' as opposed to 'actual fraud' (thereby sparing Plaintiff any proof requirement on the issue of Defendant's intent), it would appear that in this case, with the corresponding lower burden of proof for 'constructive fraud', at a minimum Fed. R. Civ. P. 9(b) is either less relevant or perhaps requires a far more liberal interpretation.").  This argument is without merit.  Although plaintiff need not plead or prove defendants' intent to succeed on her constructive fraud claim, Rule 9(b) does not require specificity in pleading with respect to fraudulent intent.  *See In re Leslie Fay Cos., Inc. Securities Litig.*, 835 F. Supp. 167, 172 (S.D.N.Y. 1993). Rather, Rule 9(b) requires specificity with respect to the acts, statements, or omissions alleged to have been fraudulent.  These elements are equally present in a claim of constructive fraud, and thus the courts have applied Rule 9(b) to all species of constructive fraud claims.  *See Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2009); *Taylor v. Feinberg*, No. 08-CV-5588, 2009 WL 3156747, at *5 (N.D. Ill. Sept. 28, 2009); *Promotional Management Group, Inc. v. Hsieh*, No. 09-CV-367, 2009 WL 2849630, at *7 (W.D. Tex. Sept. 1, 2009); *3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 8-9 (D.D.C. 2008).

found no duty on the part of lenders to disclose information they may have concerning the viability of the transactions the borrowers were about to enter;" citing cases from Third Circuit, Texas, Illinois, Arizona, Georgia, Louisiana, Maine, Minnesota, Ohio, Oregon, and Washington). Further, in such a case there can be no detrimental reliance, because the borrower is in as good a position or better to know her own financial circumstances. As one federal court has observed:

> Given the pernicious practices of payday lenders and real estate speculators lending money to those in danger of mortgage defaults, the world might well be a better place if lenders had a duty to the borrower to determine the borrower's ability to repay the loan. No such duty exists. The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's. Here again, the missing element is reliance. The [borrowers] cannot establish any right to reasonably rely on [the lender's] determination of their ability to repay the loan. Rather, the [the borrowers] had to rely on their own judgment and risk assessment to determine whether or not to accept the loan.

*Renteria v. United States*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006). Plaintiff has pointed to no Michigan case, statute, or regulation–nor have I found any–which compels a different conclusion under Michigan law. Nor does plaintiff's allegation that the defendants, by abandoning these lending practices, "embarked on a course of conduct that they knew, or alternatively, should have known based on the reckless nature thereof, quite literally is solely responsible for the chain of events that followed" state a claim for fraud. Compl., ¶ 9. Even if this allegation were true, it does not allege any false statements of fact by the defendants.

The closest plaintiff comes to alleging any fraud at all is her allegation that she was "deceived by the Defendant(s) and/or Defendant(s) assignor(s) into believing that the artificially over-inflated sales or market value ascribed to her residence was, in fact, the fair market value of her home." Compl., ¶ 14. Even here, however, plaintiff identifies not a single allegedly false statement by any of these defendants, nor does she provide the specificity required by Rule 9(b).

13

And, regardless of Rule 9(b), these allegations do not state a claim for relief.  Plaintiff's claim relating to the appraisal is based on her view that the property at question had some objective, intrinsic "value" which was overstated by the appraisal.  This is not so.  On the contrary, "[p]roperty does not have a single, absolute and correct value.  Rather, value depends on the position of potential buyers and sellers and, ultimately, on what market conditions prevail when values are gauged."  RAYMOND T. NIMMER, 1 COMMERCIAL ASSET-BASED FINANCING, § 5.50.  An appraisal is merely an estimate of the price that a willing buyer and willing seller will accept in an arms-length transaction based on market conditions as they exist at the time the appraisal is made.  There is absolutely no allegation in the complaint that the appraisal was not a good faith evaluation of the fair market value of the property *at the time the appraisal was made*.  Rather, plaintiff's claim is merely that the appraisal failed to foresee the eventual decline in the housing market.  In any event, an appraisal regarding value provides no basis for a claim of fraud, because an appraisal is merely an opinion regarding value.  Thus, the uniform rule is that an incorrect appraisal cannot constitute a tort because "representations as to value alone are generally matters of opinion upon which no detrimental reliance can occur," and because "the doctrine of *caveat emptor* applies to real estate transactions such that a buyer has a duty to satisfy himself or herself of the quality of a bargained purchase price without trusting the seller."  *Simms v. Biondo*, 816 F. Supp. 814, 820 (E.D.N.Y. 1993).  Michigan law has long followed this rule.  *See Boss v. Tomaras*, 251 Mich. 469, 473, 232 N.W.2d 229, 231 (1930) (explaining the "general rule that a statement of value is an expression of opinion and not a basis of fraud."); *cf. United States v. Miller*, 317 U.S. 369, 374 (1943) ("[A]ssessment of market value involves the use of assumptions, which make it unlikely that the

14

appraisal will reflect true value with nicety.").[4]

In short, with respect to her constructive fraud claim plaintiff's complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombley*, 550 U.S. at 570), much less has she alleged the circumstances constituting defendants' alleged fraud with the particularity required by Rule 9(b). Accordingly, the Court should grant defendants' motion to dismiss.

2.    *Breach of Fiduciary Duty*

Plaintiff also argues that defendants breached a fiduciary duty, thus constituting this specie of constructive fraud.  Although the Michigan courts do not expressly denominate a breach of fiduciary duty claim as a constructive fraud, the Michigan courts have recognized that "[d]amages may be obtained for a breach of fiduciary duty when a 'position of influence has been acquired and abused, or when confidence has been reposed and betrayed.'" *Meyer & Anna Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute*, 266 Mich. App. 39, 47, 698 N.W.2d 900, 908 (2005) (citation omitted).  Whether a fiduciary duty exists "is a question of law for the court to decide." *Id*. at 44, 698 N.W.2d at 906.  "The placement of trust, confidence, and reliance must be reasonable, and placement is unreasonable if the interests of the client and nonclient are adverse or even potentially adverse. *Id*. (citing *Beaty v. Hertzberg & Golden, P.C.*, 456 Mich. 247, 260-261, 571 N.W.2d 716, 722 (1997)).

Here, petitioner cannot succeed on her fiduciary duty claim as a matter of law.  The

---

[4]Further, although there is no Michigan law on point, other courts have generally held that because an appraisal is done for the benefit of the lender, not the borrower, there can be no detrimental reliance by the borrower.  *See McGee v. First Federal Savings & Loan Ass'n of Brunswick*, 761 F.2d 647, 648 (11th Cir. 1985); *Dubinsky v. Citicorp Mortgage, Inc.*, 708 A.2d 226, 230-31 (Conn. Ct. App. 1998); *Northern Trust*, 657 N.E.2d at 1102.

Michigan courts have explicitly held that a fiduciary relationship does not arise in the lender-borrower context, even where the borrower alleges inexperience and reliance on the lender.  *See Farm Credit Servs. of Mich.'s Heartland, P.C.A. v. Weldon*, 232 Mich. App. 662, 680, 591 N.W.2d 438, 447 (1998); *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194, 196, 480 N.W.2d 910, 911 (1991) (per curiam).  Plaintiff alleges no other special facts, beyond the existence of a borrower-lender relationship and her claims of inexperience and reliance, which would give rise to a fiduciary duty.  *Cf. Smith v. Saginaw Savings & Loan Ass'n*, 94 Mich. App. 263, 274-75, 288 N.W.2d 613, 618 (1979).  Accordingly, the Court should conclude that defendants are entitled to dismissal of plaintiff's fiduciary duty claims.

      3.    *Equity*

Although plaintiff attempts to squeeze her claim into the law governing constructive fraud, the true gravamen of her complaint is her call for this Court to "do justice" as she views it.  This call is reflected in the conclusion of her brief:

> This Court should view this case through the eyes of a social reformer who has the equitable power 'to do the right thing,' assess responsibility where it properly lies, recognize that the home value is gone and isn't coming back in the foreseeable future, and fashion a remedy that stabilizes society, helps the Plaintiff and causes no harm to the Defendant(s) (indeed arguably financially benefitting the Defendant).
> Equity based "Constructive Fraud" is the vehicle by which this Court may step up to the plate as no other elected official has.  This Court is the only official authorized by law with the statutory and legal authority to offer assistance to begin to turn our dire economic circumstances around.  Defendant(s) have generally failed to cite cases involving constructive fraud, and Plaintiff has failed as well because specific case law does not yet exist.  However, based upon Michigan's strong Public Policy to step into new unchartered waters to remedy a social wrong, promote justice, and "do the right thing" this Court should not shirk from its responsibility.  These difficult economic times call for unusual, but fair, and impartial remedies acting through public conscience and good faith to do complete justice between these parties.

Pl.'s Br., at 14-15.

16

Plaintiff's argument vastly overestimates the institutional competence of a federal district court to set broad economic policy for the country.  Such matters are properly committed to the political branches of both the state and federal governments, which have enacted numerous statutes and regulations in an attempt to address the housing crises and which have proposed a great many others.  *See, e.g.*, Arielle L. Katzman, Note, *A Round Peg for a Square Hole: The Mismatch Between Subprime Borrowers and Federal Mortgage Remedies*, 31 CARDOZO L. REV. 497, 535-42 (2009) (detailing state and federal legislative and regulatory responses to the housing crisis).

More importantly, plaintiff's plea for equitable relief flounders because, contrary to her argument, this Court has no authority to grant the relief she seeks.  Although a court of equity is not confined to the strictures of the law in fashioning appropriate relief in a case before it, a court's equitable jurisdiction does not extend to the legislating of substantive rights.  As the Michigan Supreme Court has explained, a court's equitable powers are reserved for "unusual circumstances" but are "not an unrestricted license for the court to engage in wholesale policymaking."  *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 590 702 N.W.2d 539, 556 (2005).  Thus, "[a] court cannot create substantive rights under the guise of doing equity, or confer rights where none exist."  *Henry v. Dow Chemical Co.*, 473 Mich. 63, 97, 701 N.W.2d 684, 702 (2005) (internal quotation omitted); *see also*, *Hendricks v. Toole*, 29 Mich. 340, 1874 WL 6374, at *2 (1874) ("It is not pretended that the set-off came within any known rule; but it seems to be imagined that there is some vague equity out of which the court may work it.  But courts have no power to create equities contrary to law.").  Here, plaintiff has alleged no fraud in connection with the formation of the agreement between her and defendants, and has alleged no basis for doubting the validity of the mortgage contract.  "A court of Equity may not be used . . . as the means of avoiding the consequences of a legal contract now

17

regarded as a bad bargain." *Allied Supermarkets, Inc. v. Grocer's Dairy Co.*, 391 Mich. 729, 737, 219 N.W.2d 55, 60 (1974); *see also*, *Graf v. Hope Building Corp.*, 254 N.Y. 1, 4 (1930) ("Rejection of [the mortagee's] legal right could rest only on compassion for [the mortgagor's] negligence. Such a tender emotion must be exerted, if at all, by the parties rather than the court. Our guide must be the precedents prevailing since courts of equity were established in this State. Stability of contract obligations must not be undermined by judicial sympathy.").

In short, plaintiff does not seek an equitable *remedy* to enforce a substantive right which she has under state law, but rather asks this Court to use its equitable powers to create a substantive right which does not exist under state law, one which would interfere with defendants' own legal rights to enforce the mortgage contract. Michigan law makes clear that this Court has no such power.[5] Accordingly, the Court should conclude that defendants are entitled to dismissal of plaintiff's complaint.

E.    *Amendment of the Complaint*

Attached to her response to defendants' motion plaintiff presents a proposed amended complaint, which she contends is sufficient to satisfy Rule 9(b) and Rule 12(b)(6) if the Court concludes that her initial complaint does not. The proposed amended complaint also includes a new count, alleging that defendants violated the Michigan Consumer Protection Act. Even assuming that

---

[5]Nor does federal equity law provide a basis for the relief plaintiff seeks. While a federal court exercising diversity jurisdiction may have the power to award an equitable remedy not authorized under state law, Congress's grant of equitable powers to the federal courts does not grant the federal courts "the power to deny substantive rights created by State law or to create substantive rights denied by State law." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945). Thus, a federal court exercising diversity jurisdiction "may not create a substantive right even as a matter of the equitable power of the court, where the state does not give it." *Montgomery Ward & Co., Inc. v. Pacific Indemnity Co.*, 557 F.2d 51, 58 n.9 (3d Cir. 1977); *see also*, *Purcell v. Summers*, 145 F.2d 979, 990 (4th Cir. 1944) ("We look to state law to determine what the rights of the parties are; but we look to the federal practices to determine the remedies available in the federal courts for their protection in a federal suit in equity.").

plaintiff's alternative request for leave to amend asserted in her response brief is procedurally proper, *but see Pritchard v. Rainfair, Inc.*, 945 F.2d 185, 191 (7th Cir. 1991); FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion."), the Court should conclude that plaintiff is not entitled to amend her complaint because any amendment would be futile.

1.     *Legal Standard*

Ordinarily, under Rule 15 a "court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  As with all of the Federal Rules of Civil Procedure, this rule "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."  FED. R. CIV. P. 1.  Generally, courts have shown "a strong liberality . . . in allowing amendments under Rule 15(a)."  *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865 (4th Cir. 1941).  As the Supreme Court has stated:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Thus, "[w]hen there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is abuse of discretion to deny [the] motion." *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).  In short, courts should construe liberally Rule 15(a) in favor of permitting amendment.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999); *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.

1987).

Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to deny leave to amend. One such circumstance is when amendment would be "futil[e]." *Foman*, 371 U.S. at 182; *see also*, *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003). Amendment is futile when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the proposed amendment fails to state a claim upon which relief may be granted. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).

2.    *Analysis*

Here, leave to amend would be futile because the amended complaint, like plaintiff's initial complaint, fails to state any claim upon which relief may be granted. To the extent that plaintiff attempts to cure the deficiencies in her previously pleaded claims, the proposed amended complaint fails to do so. The substantive factual allegations relating to plaintiff's constructive fraud claims are virtually identical to those asserted in her initial complaint. *Compare* Compl., ¶¶ 7-14, *with* Pl.'s Br., Ex. A, Proposed Amend. Compl., ¶¶ 4-8, 10, 12. The first two counts for relief in the proposed amended complaint are likewise identical to the two counts for relief set forth in the initial complaint. *Compare* Compl., ¶¶ 15-19, *with* Proposed Amend. Compl., ¶¶ 13-17. The only additional allegations made in the proposed amended complaint consist of two newly inserted paragraphs:

9.    In addition to breaching the duties owed to Plaintiff as hereinabove set forth, Defendant(s) misrepresented facts, and specifically those facts relating to the value of Plaintiff's home and the fact that Defendant(s)' previously prudent underwriting standards had essentially been abandoned prior to approving

Plaintiff's loan and said abandonment being without notice to your Plaintiff.

. . . .

11.     Defendant(s) are subject to Federal and State banking and loan laws, such as (a) Mortgage Lending Practices Act, Public Act 135 of 1977, specifically Section 445.1603(3) Lending policies and criteria; loan application procedures and contract terms, and (b) Consumer Mortgage Protection Act, Public Act 660 of 2002 as well as such rules and regulations promulgated by appropriate regulatory agencies.  As such, Defendant(s) are subject to prudent lending criteria standards, and thereby owe your Plaintiff the additional duty as a banking institution of insuring that Plaintiff fell within her regulated loan criteria and standards.  Defendant(s) clearly breached their duty to Plaintiff to insure that Plaintiff had the ability to afford and thereby repay her obligation to Defendant(s) and thereby retain her home.

Proposed Amend. Compl., ¶¶ 9, 11.  These paragraphs fail to cure the deficiencies in plaintiff's initial complaint.

The allegations of paragraph 9 provide no more specificity regarding defendants' allegedly fraudulent statements than does plaintiff's initial complaint.  It is merely a reformulation of her claim that defendants' misappraised the value of her home and did not appropriately consider her ability to pay.  As noted above, these claims do not provide a basis for finding constructive fraud, or support any other tort claim against defendants.  Nothing in paragraph 9 of the proposed amended complaint provides any specificity regarding the statements made to her, by whom they were made, or the time they were made as required by Rule 9(b).  This paragraph does not cure the deficiencies in plaintiff's initial complaint, and thus leave to amend would be futile.

Nor do the allegations of paragraph 11 state a claim for relief.  The section of the Mortgage Lending Practices Act cited by plaintiff merely states:

(1) Except as otherwise prohibited in section 2, lending policies and criteria of a credit granting institution used in the consideration of a loan application shall include without limitation the following:
      (a) Consideration of the credit eligibility of the applicant and the market

21

value of a proposed security.
> (b) Consideration of those factors, known to the credit granting institution, as the presence of active community and neighborhood organization, the presence of government, nonprofit, and private programs in the neighborhood intended to eliminate negative environmental influences, other revitalization efforts, and any other factors potentially mitigating the effect of physical decline.

MICH. COMP. LAWS § 445.1603(1).  Notably, this statute does not address how a lending institution

must weigh each consideration, but only states that they must be considered.  Further, the Act is

geared to making credit openly available to all applicants, *cf*. MICH. COMP. LAWS § 445.1602, as

demonstrated by the civil enforcement provision of the Act, which provides:

> A person may commence an action in the circuit court to seek an injunction for a violation or to seek damages for a violation of this act, or both. The commissioner may join as a party plaintiff in an action. A person shall not be entitled to damages under this act *unless that person has made a written loan application which has been denied or the terms of which have been varied by the credit granting institution against whom the action is filed*.

MICH. COMP. LAWS § 445.1611(1) (emphasis added).  Plaintiff has alleged neither facts showing a

violation of the act nor that her written loan application was denied or its terms varied.  Thus,

plaintiff has failed to show how any duties defendants may have had under the Act give rise to a

civil cause of action that she may prosecute.

With respect to the Consumer Mortgage Protection Act, that Act provides a mechanism of

regulatory and civil enforcement by the commissioner of financial institutes, the attorney general,

or local prosecutors, but provides for no private cause of actions.  *See* MICH. COMP. LAWS §§

445.1638-.1640.  "Generally, when a statute creates a new right or imposes a new duty, the remedy

provided by the statute to enforce the right, or for nonperformance of the duty, is exclusive.  Where

the common law provides no right to relief, but the right to relief is created by statute, a plaintiff has

no private cause of action to enforce the right unless (1) the statute expressly creates a private cause

of action, or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions." *Lane v. KinderCare Learning Centers, Inc*., 231 Mich. App. 689, 692-93, 588 N.W.2d 715, 718 (1998). Because the Act does not expressly provide a cause of action, and because the Act contains adequate enforcement mechanisms, the Act provides plaintiff with no basis for relief. *See id*.

Finally, plaintiff asserts a new cause of action under the Michigan Consumer Protection Act, alleging that defendants' conduct was unfair, deceptive, and unconscionable. However, the MCPA explicitly provides that the Act does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MICH. COMP. LAWS § 445.904(1)(a). As this Court has explained, "[t]he Michigan Supreme Court has held that, in determining if a transaction or conduct is exempt from the scope of the MCPA, 'the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is "specifically authorized." Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 720-21 (E.D. Mich. 2005) (Cohn, J.) (quoting *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465, 597 N.W.2d 28, 38 (1999)); *see also*, *Liss v. Lewiston-Richards, Inc.*, 478 Mich. App. 203, 210, 732 N.W.2d 514, 518 (2007). The Michigan Court of Appeals, surveying the numerous state and federal laws and regulations authorizing and regulating mortgage loans has concluded that "residential mortgage loan transactions fit squarely within the exemption." *Newton v. West*, 262 Mich. App. 434, 438, 686 N.W.2d 491, 493 (2004); *see also*, *Leavell v. Wells Fargo Bank, N.A.*, No. 08-15278, 2009 WL 1439915, at *5 n.7 (E.D. Mich. May 19, 2009) (Cox, J.); *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003) (Borman,

J.); *Ursery v. Option One Mortgage Corp.*, No. 271560, 2007 WL 2192657, at *14-*16 (Mich. Ct. App. July 31, 2007). Accordingly, this claim fails to state a claim upon which relief may be granted, and leave to amend would be futile.

F.     *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff has failed to state a claim upon which relief may be granted, and has failed to allege her fraud claims with particularity as required by Rule 9(b). The Court should also conclude that plaintiff's proposed amended complaint does not cure the deficiencies in her initial complaint and does not state any additional claim upon which relief may be granted. Accordingly, the Court should grant defendants' motion to dismiss.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/29/10

---

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record   by
electronic means or U.S. Mail on January 29, 2010.

s/Eddrey Butts
Case Manager

---